DECIDED IN

# THE SUPREME COURT

OF THE

## STATE OF WASHINGTON.

[No. 3063. Decided March 27, 1899.]

THE A. P. HOTALING COMPANY OF PUGET SOUND, *Appellant*, v. THOMAS H. CLANCY *et al.*, *Defendants*, LOU GRAHAM, *Respondent*.

FRAUDULENT CONVEYANCES — CONSIDERATION PARTLY VALID, PARTLY FRAUDULENT.

Where an insolvent debtor executes a chattel mortgage to a creditor for a sum in excess of his actual indebtedness, for the purpose of hindering and delaying other creditors, the mortgage is fraudulent *in toto*.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Affirmed.

*Clise & King,* for appellant:

If the person against whom fraud is alleged should be proved to have been guilty of it in any number of instances, still if the particular act sought to be avoided be not shown to be tainted with fraud, it cannot be affected by those other frauds, unless it in some way be connected with or form a part of them. *Conard v. Nicoll,* 4 Pet. 291 (7 L. ed. 862); *Fox v. Hale & Norcross S. M. Co.,* 53 Pac. 38; *Kidder's Estate,* 66 Cal. 487; *Paxton v. Boyce,* 1 Tex. 319.

The Hotaling Co. never participated in any fraud at any time, and never had any notice of the same, and, to set the mortgages aside on the ground of fraud, it is necessary it should. It was absolutely necessary that the principal should have known and participated in the fraud of its agent. *Edwards v. Reid,* 42 Am. St. Rep. 607 (58 N. W. 202); *Jones v. Loree,* 56 N. W. 392; *National Bank v. First National Bank,* 59 N. W. 231; *Chezum v. Parker,* 19 Wash. 645 (54 Pac. 24).

The validity of a mortgage is not affected by the fact that its condition misrepresents the obligation or liability in fact secured and intended to be secured by it. *Manor v. Sheehan,* 15 N. W. 688; *McKinster v. Babcock,* 26 N. Y. 379; *Goodheart v. Johnson,* 88 Ill. 58; *United States v. Griswold,* 8 Fed. 504; *Mader v. McKinnon,* 21 Can. Sup. Ct. 645.

*Lindsay, King & Turner,* for respondent:

It is conceded by appellant that the mortgage of 1892, and the note given at that time, were largely in excess of appellant's demand. This is a badge of fraud. *Bush v. Bush,* 6 Pac. 800; *Tully v. Harloe,* 35 Cal. 302 (95 Am. Dec. 102). If the result of the two mortgages of July, 1892, was to hinder, delay and defraud the creditors of Clancy & Burns, the inference of fraudulent intent necessarily arises. *Crawford v. Beard,* 8 Pac. 537; *Gollober v. Martin,* 6 Pac. 267; *Winstead v. Hulme,* 4 Pac. 998.

Notice to agent is notice to the principal, and the fraud of the agent, in the line of his agency, is likewise the fraud of the principal. *Jeffery v. Butler Paper Co.,* 37 Ill. App. 96.

The law is, that if any portion of the consideration is fraudulent, the entire conveyance is void. *Seger v. Thomas,* 18 S. W. 33; *Simon v. Ash,* 20 S. W. 719.

The opinion of the court was delivered by

REAVIS, J.—Action instituted by plaintiff (appellant) to foreclose a chattel mortgage by summary process through the sheriff. The defendants thereupon removed the proceeding to the superior court. Later the respondent, Lou Graham, intervened. The plaintiff's cause of action, as stated in the notice to the sheriff, was to recover the balance due on a note for $1,313, with accrued interest, and for the sale of chattels described in the mortgage. Intervenor set up various claims to the chattels described in the mortgage: first, that the articles described in the mortgage had become the property of the intervenor by reason of their being attached to the realty, as the mortgagors were tenants and had surrendered possession of the leased premises to intervenor without removing the fixtures; and that the mortgagors were indebted to the intervenor in a large sum. Intervenor alleged that the chattel mortgage was fraudulent and therefore void as to creditors. From the findings of the court it appears that the defendants, Clancy and Burns, who executed the mortgage, were copartners under the style of Clancy & Burns, and the affairs of the copartnership were unsettled; that about the 14th of July, 1892, the copartnership was indebted to the plaintiff in the sum of $2,734.14, for goods and wares sold by plaintiff to the copartnership, and at the same time the copartnership was indebted in large sums of money to other persons, including the intervenor, in the sum of $3,000; that the copartnership and the individual members were at that time wholly insolvent and unable to pay their debts, and have ever since remained insolvent; that, at said date—July 14, 1892—the copartnership and the individual members, with intent to cheat, hinder and delay their creditors, made and delivered to plaintiff the promissory note of the copartnership and of

the individual members thereof for the sum of $7,746.09, payable one year from date; that, as a part of the same transaction, the individual members of the partnership executed and delivered, in due form of law, a chattel mortgage conditioned to secure the said promissory note, in which chattel mortgage all the personal property and effects of Clancy & Burns were included, and at the same time, as a part of the same transaction, the individual members of the partnership, together with their wives, executed and delivered to plaintiff a real estate mortgage, whereby they mortgaged all the lands and real estate belonging to the copartnership and the individual members thereof; and that the execution of the two mortgages was made, and they were delivered and taken and accepted by plaintiff, with the common intent and purpose of plaintiff and the members of said copartnership to cheat, hinder and delay the creditors of Clancy & Burns. Both mortgages were recorded. Subsequently, during the months of July, August and September, 1892, plaintiff sold and delivered to Clancy & Burns, goods and wares to the amount of about $1,009, which remained unpaid at the time of making the promissory note in suit. In July, 1893, Clancy & Burns made and delivered to plaintiff a promissory note for about $1,258, which included said amount of $1,009 for the goods sold in July and August, 1892, and the further amount of $250 accrued interest upon the note of July 14, 1892, which was in the amount of $7,746.14, and some accrued interest upon said sum of $1,009; and thereafter, about the 13th day of October, 1893, Clancy & Burns, as copartners, and the individual members thereof, delivered to plaintiff their promissory note for the sum of $1,313, the one which is in suit, payable one year after date, in which amount of $1,313 was included and embraced the full amount of the note of July, 1893, and the accrued interest thereon to October

30, 1893; and, as a part of the same transaction, the co-partnership of Clancy & Burns delivered to plaintiff a chattel mortgage conditioned to secure the sum of $3,538.74, including said note for $1,313, together with a further sum of $2,225.74, represented and included in said note of July 14, 1892, for $7,746.14, before referred to. At the time of taking the chattel mortgage of October 13, 1893, plaintiff canceled and discharged the chattel mortgage of July 14, 1892, upon the record, but plaintiff still retains the real mortgage of July 14, 1892, and is now foreclosing the same in the superior court.

We have examined the evidence in the cause and are satisfied with the findings of the superior court. It also appears from the record that at the time the first mortgage for $7,746.14 was executed, and on the day of the execution of the note secured by it, an indorsement was made upon the back of the note reducing the amount thereof to $2,734.14. It is contended by counsel for appellant that the note, because of the indorsement, showed the true state of the account at that date between plaintiff and Clancy & Burns, but the mortgages recorded did not, and the mortgage in suit contains within its provisions security for a portion of the sums mentioned in the original mortgage. We are satisfied that the mortgage is void, and agree with the findings and legal conclusions of the superior court, and its judgment is therefore affirmed.

Gordon, C. J., and Anders and Dunbar, JJ., concur.